IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARGARET SHERROD,                    §
                                     §
                                     §
      Plaintiff,                     §
                                     §
v.                                   §        CIVIL ACTION NO. H-10-1858
                                     §
PRAIRIE VIEW A&M UNIVERSITY,         §
DR. DANNY KELLEY, Individually       §
and in his capacity as Dean          §
of the College of Arts and           §
Sciences at Prairie View             §
A & M University, and                §
DR. VICTOR HEBERT, Individually      §
and in his capacity as Head          §
of the Department of Music           §
and Theater at Prairie View          §
A & M University,                    §
                                     §
      Defendants.                    §

MEMORANDUM AND ORDER

     Plaintiff Dr. Margaret Sherrod, an employee of Prairie View
A & M University ("Prairie View"), alleges in her First Amended
Complaint that her employer and two supervisors violated Title VII
of the Civil Rights Act of 1964 ("Title VII"),[1] the Equal Pay Act,[2]
and Chapter 21 of the Texas Labor Code;[3] she also alleges that they
deprived her of equal protection of the law and retaliated against

---

[1] 42 U.S.C. § 2000e *et seq*.

[2] 29 U.S.C. § 206(d)(1).

[3] TEX. LABOR CODE ANN. § 21.001 *et seq*. (West Supp. 2010) (Texas
Commission on Human Rights Act, or "TCHRA").

her for filing a charge with the Equal Employment Opportunity Commission ("EEOC") and this present suit.[4]

Pending is Defendants' Motion to Dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Document No. 20).  Plaintiff Margaret Sherrod ("Sherrod") has filed a response to Defendants' Motion to Dismiss. (Document No. 23).

## I.  Background

Dr. Sherrod's above legal claims are based on the following allegations: Dr. Sherrod is employed pursuant to a nine-month contract with Prairie View as an administrative assistant or staff assistant.[5]  In this capacity, she has served as the Director of the Black Foxes Majorette Line of the Prairie View Marching Storm Band since 1986.[6]  She is supervised by Dr. Victor Hebert ("Hebert"), the Head of the Department of Music and Theater, and by Dr. Danny Kelley ("Kelley"), the Dean of the College of Arts and Sciences.[7]

---

[4] Document No. 18.

[5] Document No. 18 at 3, 8.

[6] Id. at 3.

[7] Id. at 13-15.

In September 2008, Sherrod accompanied the school band to a football game in Los Angeles.[8]  When she returned to Houston, Hebert observed Sherrod at the airport struggling with her personal baggage, and two suitcases and a large tote bag that contained the Black Foxes' uniforms.[9]  The baggage proved to be such a challenge that Sherrod had to rent a cart "to manage the feat."[10]  Hebert "made no attempt to assist Sherrod or to direct anyone else to do so."[11]  When she returned to Prairie View, Sherrod complained by email to Hebert about the travel situation and requested new equipment to assist her in future travels.[12]  Hebert addressed her issues and denied her request by email.[13]

The email exchange was forwarded to Dean Kelley.[14]  Thereafter, Kelley sent a text message to Hebert's cell phone, which read: "New name:  She-ROD."[15]  Hebert responded:  "and that's putting it

---

[8] Document No. 18 at 4.

[9] Id.

[10] Id.

[11] Id.

[12] Id.

[13] Id.

[14] Id. at 5.

[15] Id.

mildly!"[16]  Hebert forwarded the text message exchange to Sherrod.[17]
She was stunned and shocked by the text messages and immediately
expressed her objection and concerns to Kelley, Hebert, and the
President and Provost of Prairie View.[18]

Kelley responded "that this was his take at a 'whimsical,
light-hearted, left-handed compliment[,]' . . . [but concluded]
. . . that his 'use of such verbiage was not obviously
complimentary.'"[19]  Hebert sent to Sherrod "an email full of 'let
me cover myself' language, as well."[20]

In 2009, Sherrod was approached by a student and the parent of
a student who indicated that they were familiar with the email
exchange between Kelley and Hebert, leading Sherrod to believe that
Kelley and Hebert had disclosed the email exchange to students,
parents, and others at Prairie View.[21]

Sherrod claims that Kelley has deprived her for most of her
employment an office, phone, computer, and individual telephone
extensions, unlike the Music and Theater Department's male faculty

---

[16] Id.

[17] Id.

[18] Id.

[19] Id.

[20] Id.

[21] Id. at 6-7.

4

members.[22]  Sherrod also claims that she is paid substantially less
than her male colleagues, has never been given interim raises
during her employment, and on two occasions did not receive her pay
check timely.[23]  When she "complained of the discrimination in the
amount and timeliness of her pay, she was asked to leave her
position and seek employment elsewhere."[24]  Although the President
and Provost of Prairie View were made aware of the aforementioned
facts, they did not discipline Kelley and Hebert for their conduct
and did not remedy the discrimination experienced by Sherrod.[25]  The
Provost did not respond to her emails and did not contact her to
resolve the discrimination.[26]

　　　After Sherrod filed a claim with the EEOC and filed the
present lawsuit, she did not receive a band camp contract at the
beginning of 2010 summer camp as she had in previous years.[27]  After
she questioned the band director about the contract, Hebert's
office presented her with a contract, which she signed immediately
and returned to the appropriate personnel.[28]  She did not, however,

---

[22] Id. at 7.

[23] Id.

[24] Id.

[25] Id. at 7-8.

[26] Id.

[27] Id.

[28] Id.

receive her paycheck during the first week of September 2010, as
other instructors did; she was informed that she had not filed the
paperwork to get paid.[29]  She later learned that no other band staff
had been required to submit additional paperwork and that they had
been timely paid.[30]  She learned upon further inquiry that Hebert
delayed processing the information to generate her paycheck.[31]

Defendant Prairie View, a state agency, and Defendants Hebert
and Kelley move to dismiss Sherrod's claims under the Texas Labor
Code, and her equal protection and retaliation claims under 42
U.S.C. § 1983 based on Eleventh Amendment sovereign immunity.[32]
Defendants move to dismiss Sherrod's remaining claims for failure
to state a claim under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.[33]

## II.   Discussion

### A.   Rule 12(b)(1)

A defendant may challenge a court's jurisdiction over a claim
through a motion under Rule 12(b)(1) of the Federal Rules of Civil

---

[29] Id.

[30] Id.

[31] Id.

[32] Document No. 20.

[33] Id.

Procedure.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

1.  Sovereign Immunity - State Agency

Absent waiver by the State or abrogation by Congress, the Eleventh Amendment bars actions against a state entity in federal court by private parties seeking monetary relief. *See* McWhinney v. Prairie View A&M Univ., No. H-05-3927, 2006 WL 2253456, at *2 (S.D. Tex. Aug. 7, 2006) (concluding that Prairie View A&M University and state employees in their official capacities are immune from § 1983 claims for monetary relief); Chacko v. Tex. A&M Univ., 960 F. Supp. 1180, 1197-98 (S.D. Tex. 1997), *aff'd*, 149 F.3d 1175 (5th Cir. 1998); *see also* Clay v. Texas Women's Univ., 728 F.2d 714, 715 (5th Cir. 1984). "[T]he Eleventh Amendment [also] bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." Raygor v. Regents of the Univ. of Minn., 122 S. Ct. 999, 1004 (2002).  Defendant Prairie View, as part of the state's university system, is a state agency protected by Eleventh Amendment sovereign immunity.  *See* Nelson v. Univ. of Tex. at Dallas, 535 F.3d 318, 320 (5th Cir. 2008).

The State of Texas has not waived its sovereign immunity to suit in federal court for § 1983 claims. *See* <u>Aguilar v. Tex. Dep't of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir. 1998). Therefore, Prairie View, as a state agency, enjoys sovereign immunity under the Eleventh Amendment with respect to Sherrod's § 1983 equal protection and retaliation claims.

Likewise, the State of Texas has not waived immunity from suit in federal court for claims arising under Chapter 21 of the Texas Labor Code, including a retaliation claim under section 451.001 of the same. *See* <u>Hernandez v. Tex. Dept. of Human Servs</u>., 91 F. App'x 934, 935 (5th Cir. 2004); <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 332 (5th Cir. 2002). Therefore, Defendant Prairie View, as a state agency, enjoys sovereign immunity under the Eleventh Amendment with respect to Sherrod's claims of harassment, discrimination, hostile work environment, and retaliation arising under the Texas Labor Code.

Accordingly, such claims against Prairie View are subject to dismissal.

2.   <u>Sovereign Immunity - State Employees</u>

A claim against a state employee in his or her official capacity is merely another way of pleading an action of the entity of which the individual defendant is an agent. *See* <u>Kentucky v. Graham</u>, 105 S. Ct. 3099, 3105 (1985). Where the state has not

consented to suit, the Eleventh Amendment bars a claim for money damages from state employees in their official capacity. *See* Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, Sherrod's claims of harassment, discrimination, hostile work environment, and retaliation arising under the Texas Labor Code, and her § 1983 equal protection and retaliation claims, for which she seeks monetary damages against Hebert and Kelley in their official capacities as state employees, are barred by the Eleventh Amendment. Accordingly, such claims against Defendants Hebert and Kelley are subject to dismissal.

B.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. La Porte Constr. Co. v. Bayshore Nat'l Bank of

La Porte, Tex., 805 F.2d 1254, 1255 (5th Cir. 1986).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations ... [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 127 S. Ct. at 1965 (citations and internal footnote omitted).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."  Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).

    1.   Claims Against Hebert and Kelley

        a.   Title VII and Labor Code

Defendants seek dismissal of Sherrod's Title VII claims against Hebert and Kelley in their individual capacities because they are not employers as defined by Title VII.[34]

---

[34] Document No. 20 at 9.

Liability under Title VII attaches only to a plaintiff's "employer." 42 U.S.C. § 2000e-2(a). "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks . . . and any agent of such person." 42 U.S.C. § 2000e(b). Title VII does not attach to individuals acting in their individual capacity. Grant v. Lone Star Co., 21 F.3d 649, 651-53 (5th Cir. 1994). "[T]he proper method for a plaintiff to recover under [T]itle VII is to sue the employer, either by naming the supervisory employee as agent of the employer or by naming the employer directly." Id. at 652.

The same holds true for claims asserted against supervisors or individual employees under Chapter 21 of the Texas Labor Code. See City of Austin v. Gifford, 824 S.W.2d 735, 742 (Tex. App.–Austin, 1992, no writ).

To the extent that Sherrod asserted a cause of action against Defendants Kelley and Hebert in their individual and supervisory capacity under Title VII and Chapter 21 of the Texas Labor Code,[35] her claims are subject to dismissal for failure to state a claim.

---

[35] Sherrod claims that she does not seek relief from Defendants Kelley and Hebert in their individual capacities under Title VII. See Document No. 23.

11

b.   42 U.S.C. § 1983

Defendants Kelley and Hebert, in their individual capacities, have asserted the defense of qualified immunity from Sherrod's § 1983 equal protection and retaliation claims.[36]   Defendants contend that Sherrod has not sufficiently set out specific facts of actionable conduct so as to overcome their defense of qualified immunity with respect to her claims under § 1983.[37]   In accordance with Federal Rule of Civil Procedure 7(a) and Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995), the Court looks to Plaintiff's First Amended Complaint (Document No. 18) and her Rule 7 Reply. (Document No. 13).

Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity from suits in their individual capacity.  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity protects government officials sued pursuant to § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. 808, 815

---

[36] See Document No. 20.  Sherrod did not plead a retaliation claim against Defendants Hebert and Kelley in her original complaint.  (Docket Entry No.1, page 11).  In her First Amended Complaint, she asserts a retaliation claim against all three Defendants under 42 U.S.C. § 1983, the Equal Pay Act, Title VII, and the Texas Labor Code.  Document No. 18 at 15.

[37] Document No. 20.

(2009).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal quotation marks omitted).  The Fifth Circuit has emphasized the broad protections of qualified immunity, stating that it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009).

"To rebut the qualified immunity defense, the plaintiff must show:  (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident."  Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 129 S. Ct. at 818.

Section 1983 does not create substantive rights, but rather is merely a procedural rule that provides a private cause of action for redressing a violation of federal law or "vindicating federal rights elsewhere conferred."  Albright v. Oliver, 114 S. Ct. 807, 811 (1994) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694, n.3 (1979)).  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  Johnston v.

13

Harris County Flood Control Dist., 869 F.2d 1565, 1574 (5th Cir. 1989).  To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).  A § 1983 plaintiff must support her claim with specific facts demonstrating a constitutional or statutory deprivation and may not simply rely on conclusory allegations.  Schultea, 47 F.3d at 1433.  Employment discrimination claims brought under § 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII.  Tanik v. Southern Methodist Univ., 116 F.3d 775, 775 (5th Cir. 1997).

### (i)  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend XIV, § 1.  Title VII forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment."  Southard v. Texas Bd. of Criminal

14

<u>Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997).  When, as here, a § 1983 claim parallels a Title VII claim under a given set of facts, "the elements required to be established for each claim are deemed the same under both statutes."  <u>Merwine v. Bd. of Trustees for State Inst. of Higher Learning</u>, 754 F.2d 631, 635 n.3 (5th Cir. 1985).

Sherrod alleges that, as her supervisors, Hebert and Kelley subjected her to unwelcome harassment based on her sex by using a derogatory term to describe her in a text message, which was shared with others.[38]  She alleges that such conduct was sufficiently severe and pervasive as to alter the terms and conditions of her employment and to create a hostile work environment.[39]  She further alleges that Kelley and Hebert "intentionally sexually harassed [her] and created an intimating and hostile work environment, in violation of [her] right to equal protection."[40]

To state a claim for sexual harassment under Title VII, and so under § 1983, a plaintiff may either prove her claim by establishing that a tangible employment action was taken against her because of her sex, or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her sex and created a hostile or abusive

---

[38] Document No. 18 at 11.

[39] <u>Id.</u>

[40] <u>Id.</u> at 14.

environment.  *See* Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 268-69 (5th Cir. 1998).  A tangible employment action is one which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2268 (1998).

Sherrod does not allege facts showing that Defendants took any adverse employment action against her with respect to the circumstances surrounding the derogatory text-message.[41]  Therefore, the issue here is whether Defendants' behavior created a hostile or abusive working environment.

Where the claim of harassment is against a supervisor, as in this case, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment.  Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).  For harassment to be actionable, it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working

---

[41]  In fact, Sherrod alleges that she continues in the employment of Prairie View as Director of the Black Foxes and holds titles as Administrative Assistant or Staff Assistant.  She also refers to her continued travel with the band and the Black Foxes.

environment." Celestine v. Petroleos de Venezuella, SA, 266 F.3d 343, 353 (5th Cir. 2001). This requires showing that the environment is both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Butler, 161 F.3d at 269.

Title VII, however, is not a "'general civility code,'" and "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283-84 (1998); Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009). Sherrod's allegations do not show that the text message exchange in this case, including the fact that some others learned of it, is sufficiently severe or pervasive to constitute sexual harassment or to affect a "term, condition, or privilege" of employment. Sherrod has not pled facts to show that the content of the text message did in fact alter the terms and conditions of her employment. See, e.g., Harilall v. Univ. Health Sys. Dev. Corp., No. 98-50652, 1999 WL 152923, at *4 (5th Cir. Feb. 18, 1999) ("Wetback" and "illegal alien" comments insufficient to create work environment hostile to national origin); Boyd v. State Farm Ins. Co., 158 F.3d 326, 329-330 (5th Cir. 1998) ("Buckwheat" and "Porch Monkey" comments insufficient to create racially hostile work environment); Adams v. B & B Rests.,

17

Inc., No. H-07-1352, 2008 WL 4155458, at *4 (S.D. Tex. Sept. 4, 2008) (no hostile work environment resulting from single incident where employee "got close in [plaintiff's] face and said 'F--k you' three times,' " and then "yelled on the phone to her supervisor, 'Get this nigger bitch out of my store.'"); Casper v. Gunite Corp., 221 F.3d 1338, 2000 WL 975168, at *2 (7th Cir. July 11, 2000) (unpublished) (referring to mentally disabled plaintiff as "Rick Retardo" and "dumb ass" not sufficient to create hostile work environment").   At most, Sherrod's allegation of Kelley's and Hebert's reference to her in the text message exchange is comparable to a racial epithet or slur, and this is not enough to state a claim.   Accordingly, Hebert and Kelley are entitled to qualified immunity on Sherrod's harassment and hostile work environment claim under § 1983.

Sherrod also alleges that because she is female, Prairie View and its administrators deprived her of an office and needed work space, subjected her to ridicule when she requested assistance, delayed her compensation, failed to give her interim raises, paid her less than comparable male employees, and suggested that she seek employment elsewhere.[42]   She alleges that she brought this discrimination to the attention of her supervisors, including Hebert and Kelley, and "was told that she should pursue employment elsewhere because it was not wise to work somewhere she was not

---

[42] Document No. 18 at 12.

being paid."[43]   She also alleges that Kelley and Hebert knew that she "was being discriminated against in the terms and conditions of her employment because of her sex, and took no action to remedy the discrimination."[44]

Sherrod complains that for the majority of her employment, she has endured a "history of mistreatment from Dean Kelley" by his failure to provide her, as he does the Department's male faculty members similarly situated to her, with offices, phones, computers, and individual telephone extensions.[45]   Sherrod also claims that on occasion male staff members received payroll checks and she did not, due to what Kelley alleged was "delayed paperwork and a host of other excuses."[46]   She contends that Kelley, as department head, was in the "direct chain of command that should have influenced the resolution to these issues."[47]

Sherrod further complains that Hebert discriminated against her by delaying her compensation and the processing of information necessary to generate her paycheck in September 2010, but did not

---

[43] Id.

[44] Id. at 13-15.

[45] Id. at 7.

[46] Id.

[47] Id.

delay the same with respect to "[o]ther band directors and band staff."[48]

To state a *prima facie* case for sex discrimination, a plaintiff must plead facts to show that (1) she is a member of a protected group; (2) she was subject to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably than she. Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007). Discrimination claims are actionable under Title VII only for "adverse employment actions" that involve "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559-60 (5th Cir. 2007).

Sherrod's claim that Kelley did not provide her with offices and amenities such as phones and computers does not constitute an adverse employment action. *See, e.g.*, Earle v. Aramark Corp., 247 F. App'x 519, 523 (5th Cir. 2007) (finding that denial of administrative support, mentoring and training opportunities, and having employment resources withheld are not adverse employment decisions for purposes of sex discrimination analysis). Likewise, her delay-in-pay discrimination claims against Hebert and Kelley are not actionable. Sherrod does not allege that she never

---

[48] Id. at 9.

received her paycheck or that the paycheck was for any less than the full amount expected. "In cases where the evidence produces no objective showing of loss in compensation, duties, or benefits," no adverse employment action exists. <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 283 (5th Cir. 2004).

Moreover, Sherrod's allegation that Kelley and Hebert took no action to resolve her discrimination claims or that they were in a position to do so is conclusory. *See* <u>Schultea</u>, 47 F.3d at 1433 (requiring factual support for allegations brought under § 1983). Although her pleadings show that both Defendants are supervisors, she states no facts to show that Kelley or Hebert had anything to do with her not receiving interim raises or receiving lower pay. "Personal involvement is an essential element of a civil rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983).

Furthermore, Sherrod states no facts to show that Defendants' failure to assist with luggage, to authorize transportation or new equipment, and to appropriate office space were gender based that would give rise to a hostile work environment claim based on sexual harassment or discrimination.

Defendants Hebert and Kelley, therefore, are entitled to qualified immunity on Sherrod's discrimination claim under § 1983 and, accordingly, on her claim of denial of Equal Protection under the Fourteenth Amendment.

21

(ii)   <u>Retaliation</u>

Plaintiff also claims that Kelley, Hebert, and Prairie View administrators violated § 1983 by retaliating against her "for engaging in protected activities of opposing and reporting the sex discrimination and sexual harassment by Dr. Hebert and Dean Kelley, as well as filing a Charge of Discrimination with the EEOC and subsequently filing this lawsuit."[49]   She states no specific retaliatory act attributable to Kelley but complains that Hebert delayed her compensation and the processing of information necessary to generate her paycheck in September 2010.[50]

To state a *prima facie* case of retaliation for the exercise of a federally protected right, a plaintiff must show that: (1) she participated in a protected activity; (2) an adverse employment action followed; and (3) that there was a causal connection between the protected activity and the adverse action.   <u>Southard</u>, 114 F.3d at 554.   In this context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"   <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126

---

[49] Document No. 18 at 15.

[50] <u>Id.</u> at 9.

S. Ct. 2405, 2415 (2006).  "[N]ormally[,] petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id.

"The antiretaliation provision protects an individual not from all retaliation but from retaliation that produces an injury or harm." Id. at 2414.  The Supreme Court emphasized that it spoke of "*material* adversity because we believe it is important to separate significant from trivial harms." Id. at 2415.  Thus, in Burlington Northern, the Court upheld a finding of retaliation where the plaintiff was suspended from work for 37 days without pay, which required her and her family to live for 37 days without pay and without knowing whether or when she would ever return to work. Id. at 2417.  Nothing remotely approaching those facts is pled by Sherrod in this case.  The alleged delay of "more than a week" in receiving her contract pay for a summer job, attributed by Sherrod to Hebert's delay in processing information required to generate the paycheck, and with no *material* adversity alleged to have been suffered by Sherrod, is an event that falls into the "trivial harms" category and states no cause of action.  Defendants Hebert and Kelley, therefore, are entitled to qualified immunity on Sherrod's retaliation claim under § 1983.

23

2.  Claims Against Prairie View

    a.  Compensation

Sherrod alleges that she does substantially equal work to male employees in the performance of duties which require substantially equal skill, effort, and responsibilities as jobs held by male employees, and she performs her job under similar working conditions as male Prairie View employees.[51]  She alleges that in violation of Title VII and the Equal Pay Act, Prairie View intentionally paid her lower wages, deprived her of the same benefits, and delayed her pay "as compared to male employees performing similar work in the PVAMU College of Arts and Sciences."[52]

Under Title VII, Sherrod, a member of a protected class, must state some facts to show that she was paid less than a nonmember for work requiring substantially the same responsibility.  *See* Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x 377, 384 (5th Cir. 2006) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984).  Under the Equal Pay Act,[53] Sherrod must

---

[51] Document No. 18 at 13.

[52] Id.

[53] The Equal Pay Act, a provision of the Fair Labor Standards Act, prohibits discrimination "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which

24

state facts to show that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions, and was paid less than the employee of the opposite sex providing the basis of comparison.  Jones v. Flagship Int'l, 793 F.2d 714, 722-23 (5th Cir. 1986); Corning Glass Works v. Brennan, 94 S. Ct. 2223, 2226 (1974) (stating that the plaintiff must show that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions).

Sherrod's compensation claims are no more than a formulaic recitation of the elements of an equal pay cause of action.[54]  She states no facts in her Amended Complaint to show which male employees are being paid higher wages for performing "equal work" that requires the same kind of skill, effort, and responsibility,

---

requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).

[54] Sherrod alleges a history of mistreatment that includes substantial less pay than "her male colleagues" and no interim raises, "unlike her male colleagues."  Document No. 18 at 7.  She alleges intentional discrimination because she "was not paid in a timely manner, was not given interim raises, and continued to be paid less than comparable male employees."  Id., at 12.  She claims that she is "doing substantially equal work to male employees in the performance of duties which require substantially equal skill, effort, and responsibilities as jobs held by male employees" and that she "performed her job under similar working conditions as male PVAMU employees."  Id., at 13.

under similar working conditions, as is required of Sherrod for her work as Director of the Black Foxes Majorette Line, nor has she pled the dates that such employment actions occurred. *See* Trevino-Garcia v. Univ. of Tex. Health Science Ctr., No. SA-09-CA-072-XR, 2009 WL 5195962, at *3 (W.D. Tex. Dec. 21, 2009) (dismissing for failure to state a claim because plaintiff points to no male employee to whom she was similarly situated who was paid more than she was for the same work); Carey v. State of La., No. A.00-2657, 2001 WL 1548962, at *7 (E.D. La. Dec. 5, 2001) (requiring plaintiff to file a more definite statement and "include specific facts which give rise to his claim" or have his equal pay act claim dismissed); *cf.* Belgrave v. Splendora Indep. Sch. Dist., No. H-07-1704, 2007 WL 2751887 (S.D. Tex. Sept. 20, 2007) (denying motion to dismiss because plaintiff claimed that the person previously in his position, who was a woman, was paid at a higher salary and was granted more job privileges than he enjoyed).   Accordingly, Sherrod's compensation claims pursuant to Title VII and the Equal Pay Act are subject to dismissal for failure to state a claim pursuant to Rule 12(b)(6).

     b.  Harassment, Discrimination, Retaliation

Sherrod claims that Prairie View's failure to remedy the sexual harassment she suffered via the text message exchange and thereby, created a hostile working environment.  Where a hostile

26

environment claim is against an employer, the plaintiff must show that her employer knew or should have known of the harassment and failed to take prompt remedial action.   Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 434 (5th Cir. 2005).   The Court found no actionable sexual harassment or hostile environment claim against Kelley and Hebert.   Because Sherrod's hostile work environment claims against Prairie View regarding the text message are derivative of her claims against Kelley and Hebert, the Court finds that she has not stated an actionable Title VII sexual harassment-hostile work place claim against Prairie View.

Sherrod alleges that Prairie View and its administrators intentionally discriminated against her because of her sex by depriving her of an office and needed work space, subjecting her to ridicule when she requested assistance, delaying her compensation, and suggesting that she seek employment elsewhere.[55]   The Court has found that Sherrod failed to state an adverse employment action giving rise to a sex discrimination claim under the Equal Protection Clause against Hebert and Kelley on her claims of withholding employment resources and amenities and the delay in receipt of compensation.   Sherrod states no facts, other than the text message exchange, which show that she was ridiculed by Prairie View administrators, and no facts that would give rise to a claim

---

[55] Document No. 18 at 12.

27

that the alleged ridicule or suggestion of new employment was so humiliating or offensive as to alter the conditions of her employment.

Additionally, Sherrod's conclusory allegations that she was never given interim raises and was paid less than her male counterparts lack any specificity and do not state facts to support her claim for discrimination. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993). Sherrod's Amended Complaint does not state facts from which the Court may infer that any discrimination *on the basis of sex* occurred. Therefore, Sherrod's subjective belief that Prairie View discriminated against her on the basis of sex, without specific facts pointing to sex bias as the motivation, is insufficient to maintain a claim of discrimination. *See* id.; K.T. v. Natalia I.S.D., 2010 WL 1484709 at *3 (W.D. Tex. Apr. 12, 2010) (holding that plaintiffs' subjective belief of defendant's discriminatory intent is not enough to prevent a motion to dismiss) (citing Henrise v. Horvath, 45 F. App'x 323 (5th Cir. 2002)); Drake v. St. Paul Travelers Ins., No. 6:08-CV-301, 2009 WL 815999 at * 7 (E.D. Tex. Mar. 26, 2009) (holding that plaintiff's conclusory allegations were insufficient to state a claim because he offered no reason to suspect that the

defendant's actions had anything to do with the plaintiff's protected class); C.H. v. Folks, No. 10-CA-0114-XR, 2010 WL 3257620 at *5 (W.D. Tex. Aug. 17, 2010) (same).  Accordingly, Sherrod fails to state an actionable Title VII discrimination claim against Prairie View.

Sherrod also claims that Prairie View and its administrators retaliated against her for filing an EEOC claim and the present suit by subjecting her to untimely pay and less compensation than male colleagues and by attempting to force her to leave her position at Prairie View.   To state a *prima facie* case of retaliation under Title VII, Sherrod must plead facts indicating that: (1) she was engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.   Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003).

The record shows that Sherrod filed her EEOC claim in June 2009, received a right-to-sue letter dated February 23, 2010, and filed this suit on May 24, 2010.  Other than the delayed check in September 2010, she states no specific adverse act related to her post-filing activity and no facts showing a causal link between filing her claim and this suit and any adverse employment action taken by Prairie View administrators thereafter.  *See* Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001) (noting cases

holding three and four month periods between protected activity and
adverse employment action are insufficient to establish causal
links). Accordingly, Sherrod's Title VII retaliation claim against
Prairie View is subject to dismissal for failure to state a claim.

III.  <u>Order</u>

    For the foregoing reasons, it is

    ORDERED that Defendants Dean Danny Kelley's and Dr. Victor
Hebert's Motion to Dismiss (Document No. 20) is in all things
GRANTED, and all § 1983 and TCHRA claims alleged against Defendants
Kelley and Hebert in their official capacities are DISMISSED for
lack of subject matter jurisdiction; all Title VII and EPA claims
alleged against Defendants Dean Kelley and Dr. Hebert in their
official capacities are DISMISSED for failure to state a claim upon
which relief can be granted; and all § 1983 claims, including those
under the Fourteenth Amendment, against Defendants Dean Kelley and
Dr. Hebert in their individual capacities, are DISMISSED based upon
their qualified immunity.  It is further

    ORDERED that Defendant Prairie View A & M University's Motion
to Dismiss (Document No. 20) is GRANTED as follows, and all § 1983
and TCHRA claims alleged against Prairie View A & M are DISMISSED
for lack of subject matter jurisdiction; Plaintiff's Title VII
hostile work environment claim against Prairie View A & M is
DISMISSED on the merits for failure to state a claim upon which

30

relief can be granted; and Plaintiff's Equal Pay Act and Title VII discrimination and retaliation claims against Prairie View A & M are conditionally DISMISSED, such dismissal to become final within 14 days after the date of this Order unless Plaintiff Sherrod, within 14 days, files a more definite statement in the form of a Second Amended Complaint, against Prairie View A & M only, alleging with particularity, if she can do so consistent with Federal Rule of Civil Procedure 11(b), specific facts sufficient to state a claim upon which relief can be granted under the Equal Pay Act, Title VII discrimination in compensation, and for retaliation.[56] The Second Amended Complaint shall not restate any claims against Hebert and Kelley in either their individual or official capacities, and Defendants Hebert and Kelly are DISMISSED from this case.  Further, Plaintiff shall not restate § 1983 or TCHRA claims against Prairie View, which claims have been dismissed based on sovereign immunity, nor shall Plaintiff restate against Prairie View A & M her Title VII hostile work environment claim, which is wholly dependent upon Plaintiff's claims against Hebert and Kelley,

---

[56] Even though Plaintiff's claims against Prairie View are largely derivative of her failed claims against Hebert and Kelley, the Court will permit Plaintiff to replead against Prairie View only, because Plaintiff's Rule 7 reply and First Amended Complaint technically were in response to Hebert's and Kelley's pleas of qualified immunity.

31

which already have been repled and which fail to state a claim upon which relief can be granted.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 8th day of March, 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE